CUNNINGHAM ET AL. *v.* STATE OF INDIANA.

[No. 14,383. Filed July 27, 1932. Rehearing denied October 27, 1932. Transfer denied January 10, 1933.]

*Pickens, Davidson, Gause, Gilliom & Pickens,* for appellants.

*James M. Ogden,* Attorney-General, and *Connor D. Ross,* Assistant Attorney-General, for the State.

LOCKYEAR, J.—This action was commenced by the appellants as plaintiffs against the appellee, State of Indiana, as defendant, in the Marion Superior Court sitting as a court of claims under the laws of this state.

The complaint consists of a single paragraph which alleges, in substance, that the State of Indiana, through the Director of the State Highway Commission, on April 9, 1926, entered into a written contract with the plaintiffs for the construction by plaintiffs for the State of a section of state highway No. 7 about eight and one-third miles in length between the city of Huntington and the village of Roanoke, in accordance with certain plans and specifications which are set out as exhibits to the complaint and made a part of it. That the contract called for the completion of this improvement by November 1, 1926.

That the plaintiffs supplied all things required of them, promptly began to construct said highway in accordance with said plans and specifications and would,

had they not been prevented from so doing by the State, its engineer, officials, and agents, have completed said improvement in accordance with said plans and specifications by November 1, 1926.

That after plaintiffs had constructed approximately 80 per cent of the grade, drains, and waterways for said highway in accordance with said plans and specifications preparatory to the laying of the pavement, and after plaintiffs had moved paving materials, machinery, and equipment to the road and were ready to begin laying pavement in accordance with said plans and specifications, the defendant, through its said highway engineer and highway officials, refused to permit plaintiffs to lay said pavement on said grade as constructed in accordance with said plans and specifications and to complete the remainder of said grade, drains, and waterways in accordance with said plans and specifications and refused to approve said work if constructed in accordance with said plans and specifications as the same existed and were a part of said contract; that without provision or authority therefor in said contract and after the grading and preparation for paving had been accomplished to the extent aforesaid by the latter part of July, 1926, defendant, through its engineer and officials, made numerous material changes, alterations, and additions in and to said plans and departures therefrom which applied to the portion of the grade, drains, and waterways already constructed as well as to the part yet to be constructed and required of plaintiffs that they reconstruct the grade, drains, and waterways, which already had been constructed, in accordance with said changes, alterations, additions, and departures in and from said original plans and to construct the remainder of the grade, drains, and waterways in accordance with said altered plans before any pavement was laid on said highway.

The defendant's refusal to permit and approve highway and pavement to be constructed in accordance with said original plans and specifications and said requirement that said highway be constructed in accordance with said altered plans constituted breaches of said contract.

That plaintiffs protested to said defendants against said changes in said plans and the delay and damages resulting to them in not being able to complete said highway within the time they otherwise would; that plaintiffs notified defendant that they would proceed to construct said highway in accordance with said altered plans under protest and would hold defendant liable for the damages caused to them on account of the resulting delays.

That while plaintiffs were engaged in reconstructing said grade already constructed, and while they were constructing the grade, drains, and waterways for said highway preparatory to paving it in accordance with said altered plans, defendant, its engineer and officials, as late as October 26, 1926, made still further alterations, and additions to the plans as already altered and required plaintiffs to do said work of grading, etc., preparatory to paving in accordance with said plans as altered the second time.

That none of said alterations in said original plans were authorized by said contract and were not consented to by plaintiffs; that said alterations were required at a late and unseasonable time; that none of said alterations were necessary in order to construct said highway in accordance with said original plans, but were necessary only in the sense of providing for materially different grades, drains, and waterways than provided for in said original plans; that the additional work caused by said alterations exceeded the quantity of additional work for which provision was made in said contract; that defend-

ant failed to procure some necessary right of way for said highway by the time it was needed in the construction of said highway and that failure to get said right of way caused delay in doing said work.

That because plaintiffs were prevented from laying said pavement on a grade constructed in accordance with said original plans and because they were required to reconstruct said grade, etc., in accordance with said belated and unauthorized alterations and because of said failure to procure said right of way, the plaintiffs were prevented from laying any pavement on said highway during 1926; that because of the delays resulting from said breaches of said contract by defendants the plaintiffs were delayed a full year in the completion of said highway; that all of the pavement had on that account to be laid in the year 1927; that because of the lateness of the time when said changes were required plaintiffs were unable to even finish said grade and drains in 1926.

That plaintiffs were damaged by reason of said delay in laying said pavement; that plaintiffs were also required to use soft dirt for a grade in violation of the contract and specifications to their damage; that in all, plaintiffs were damaged in the sum of $48,911.09 as the proximate result of said breaches of said contract by defendant.

The appellee filed demurrer for want of facts to the complaint.

The appellee filed an answer in two paragraphs; the first was in general denial, and the second was on the theory that plaintiffs proceeded with the work after the alleged breaches of the contract by the defendant without protest, and that they have waived their right to damages and are estopped from claiming them.

The appellants filed a demurrer for want of facts to the second paragraph of answer.

The appellants filed a reply in general denial to the second paragraph of answer.

The court overruled appellee's demurrer to the complaint, to which ruling appellee at the time excepted.

The court overruled appellant's demurrer to the second paragraph of answer, to which ruling the plaintiffs at the time excepted.

The court tried the case; found generally for the appellee and rendered judgment for the appellee.

The court overruled appellant's motion for a new trial to which ruling the appellants at the time excepted.

The assignment of error is that the court erred in overruling appellant's motion for a new trial.

Appellants rely on the error of overruling the motion for a new trial on both grounds therein stated, to-wit:

1. The decision of the court is not sustained by sufficient evidence.

2. The decision of the court is contrary to law.

That part of the contract that we need to consider is as follows:

*Sec. 22. Changes in Plans.* The contractor shall make no change from the plans and specifications unless so authorized in writing by the engineer. In case of any discrepancy, between the scaled and figured dimensions of any drawings, the engineer shall make such corrections and interpretations as may be necessary to carry out the intent of the contract. The engineer reserves the right to make such alterations in the plans, or in the character or quantity of the work as may be necessary from time to time, not to exceed 20% of the contract price. The contractor agrees to make such changes at the unit prices bid for the items involved.

*Sec. 24. Extra Work.* Work other than that provided for in the contract shall be performed by the contractor whenever in the opinion of the engineer such work is necessary to properly complete the proposed improvement.

This work will be paid for as agreed upon previ-

ously by the contractor and the director. If no such agreement can be made or where this method of payment is impracticable, the director may order the contractor to do such work on a "force account" basis.

The standard form of contract for constructing the highway in question covers every contingency which men versed in constructing state highways could foresee.

It provides for changes in plans and specifications and what is to be paid in case the change shall not exceed 20%.

The contract provides for extra work and the basis for pay for the same, even if the change in any item exceeds 20% and if the contractor does the work according to the plans and specifications as changed, the State is liable for the extra work occasioned by the change. The liability arises under the contract and not on account of the postponement of the date of the completion of the work occasioned by the change in plans.

If the plans are changed in an amount over 20%, the contractor's action is for services rendered and not for damages for delay.

Even with the greatest care and forethought no man or set of men can foresee everything that may cause delay.

In this case the appellants were delayed by excessive rains.

Extension of time in which to complete the work was granted appellants.

It is true that when the rains came, it was found that it was necessary to raise the grade in places. To do this, it was necessary to get dirt and the best that could be had was muck; but that did not in any way abrogate the contract.

An approach to the road proper at a crossing grade right of way caused some adjustment in a situation at the east section of the road, but no appreciable delay seems to have been proven in that regard.

There is evidence in the record to the effect that the appellant had other jobs during the summer in question and that work elsewhere contributed to the delay on this job.

The appellants rely upon the case of *State* v. *Feigel* (1933), 204 Ind. 438, 178 N. E. 435, as authority to sustain their position that they were prevented by the acts of the agents and servants of the appellee from completing the work in the time specified in the contract.

There is competent evidence in the record that refutes that contention and we cannot under such circumstances reverse the judgment.

Ralph Morris, an engineer in charge, testified in detail as to the progress of the work during the summer of 1926, that there was excessively heavy rains during August of that year and it was his opinion that the pavement could not have been done from August 1 to November 1, 1926, under the weather conditions.

William F. Bookwalter, a civil engineer, employed by the appellee, who had charge of the field personnel of road construction, testified to the same effect as that detailed by the witness Morris. He testified that there was no deductions made in the payments made to the appellants for delays.

J. T. Hallett, another engineer, testified as to the changes made in the grade because high water showed the necessity for raising the grade.

This action is not bottomed on the contract, but is for alleged acts of appellee's agents that prevented the appellants from carrying out the contract.

The contract provided for extra work, and for changes

in plans and specifications. The appellant accepted the contract with those provisions the same as the other terms of the contract.

The appellants have been paid according to the terms of the contract.

The burden was upon the appellants to prove the material allegations of their complaint.

The judges of the Superior Courts of Marion County were the triers of the facts of this case. There is ample evidence to support the finding of the court that the changes in plans and specifications were authorized by the contract and were seasonably and reasonably made.

For example, one L. H. Kemmer testified: "After the 1st of August there were numerous changes made in the plans. Am not sure about the date of August 20th, but it was some time in August. In the latter part of October there were still some changes made. With the equipment plaintiffs had on the job, it would have been impossible to have made those changes and laid the pavement by November 1. With reasonable equipment it would be impossible. Considerable grading had been completed when those changes were made. It might have taken a little longer, but not a great while, to change the grade when the changes were made after the first grading was done than it would have if the plans had originally been as they were afterward changed."

The evidence is sufficient to sustain the finding and the finding of the court is not contrary to law.

The judgment is affirmed.